1  Deborah Tuck
   1600 E. Vista Way #85
2  Vista, CA 92084
   Ph: 760-840-1806
3

4  Plaintiff In Pro Se

5

6

7

```
┌─────────────────────────────────┐
│         FILED                    │
│   ┌───────────────────┐          │
│   │   MAR 2 1 2016     │          │
│   └───────────────────┘          │
│    CLERK US DISTRICT COURT       │
│ SOUTHERN DISTRICT OF CALIFORNIA  │
│ BY          TH          DEPUTY   │
└─────────────────────────────────┘
```

8           IN THE UNITED STATED DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
9

10  DEBORAH TUCK,                      )  Case No.  '16 CV 0684 WQH DHB
                                       )
11              Plaintiff,             )  COMPLAINT FOR
                                       )  DAMAGES AND INJUNCTIVE
12      vs.                            )  RELIEF PURSUANT TO
                                       )
13  PORTIFOLIO RECOVERY ASSOCIATES, LLC., )  1) TELEPHONE COMMUNICATIONS
14  a Virginia Corporation doing business in California, )     PRACTICES ACT (TCPA)
    HSBC BANK NA, a consumer creditor doing )     47 U.S.C.§227 et.seq.;
15  business in California,            )
    EQUIFAX INC., a National consumer credit )  2) VIOLATIONS OF FEDERAL FAIR
16  reporting agency("CRA"),          )     DEBT COLLECTION PRACTICES
    TRANS UNION LLC. a National consumer )     ACT(FDCPA) §1692 et seq.
17  credit reporting agency("CRA")    )
    EXPERIAN INFORMATION SOLUTIONS INC )  3) VIOLATIONS OF FEDERAL FAIR
18  a National consumer credit reporting agency )     CREDIT REPORTING ACT;
    ("CRA")                           )     (FCRA) 15 U.S.C.§1681 et seq.
19                                     )
                Defendants.            )  4) VIOLATIONS OF CALIFORNIA'S
20                                     )     CONSUMER CREDIT
                                       )     REPORTING AGENCIES ACT;
21                                     )     (CCRAA) CIV. CODE §1785 et seq.
                                       )
22                                     )  5) VIOLATIONS OF CALIFORNIA'S
                                       )     ROSENTHAL FAIR DEBT
23                                     )     COLLECTIONS PRACTICES ACT
                                       )     CALIFORNIA CODE CIV.§1788 et seq.
24                                     )
                                       )  6) DECLARATORY RELIEF
25                                     )
                                       )  DEMAND FOR JURY
26                  COMPLAINT

27      COMES NOW, DEBORAH TUCK, plaintiff, In Pro Se in the above-entitled

28  case as an individual hereby sues the above-named defendants and makes the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                          PAGE 1

                                              Court Copy (1)

1 following allegations and claims against all of these same said defendants for strict
2 statutory violations of:   The Telephone Communications Practices Act (TCPA)
3 47 U.S.C.§227 *et.seq*, Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692
4 *et seq.*, for violations of the Telephone Communications Practices Act (TCPA)
5 47 U.S.C. §227(a)(iii), and also for violations of the California Rosenthal Fair Debt
6 Collection Practices Act Civil Code Section 1788 *et seq.*

7

## I.   **PRELIMINARY STATEMENT**

9     **1.** This is an action for damages and injunctive relief brought to this Ninth
10 District Court by Plaintiff DEBORAH TUCK against all of the following
11 named defendants as follows: ●

12     ●     PORTFOLIO RECOVERY ASSOCIATES, LLC., a Virginia
13 Corporation, doing business in California as a consumer debt collections company.

14     ●     HSBC BANK, a National consumer credit provider, doing
15 business in California,

16     ●     EQUIFAX INC., a National consumer credit reporting agency or
17 ("CRA") as defined by 15 U.S.C. §1681(f).

18     ●     TRANS UNION LLC., a National consumer credit reporting agency or
19 ("CRA") as defined by 15 U.S.C. §1681(f).

20     ●     EXPERIAN INFORMATION SOLUTION INC., a National credit
21 reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

22     ●     DOES 1 thru 10 inclusively,
23 for numerous statutory violations of the Telephone Communications Practices Act
24 (TCPA) as follows: ●

25     ●     47 U.S.C. §227(b)(1)(A)  (TCPA);

26     ●     47 U.S.C. §227(b)(1)(A)(iii), (TCPA);

27 for strict statutory violations of the Fair Debt Collection Practices Act
28 (FDCPA) as follows: ●

1    `        • 15 U.S.C.§1692c(a)(1),  Fair Debt Collection Practices Act (FDCPA)

2    • 15U.S.C.§1692d(5),  Fair Debt Collection Practices Act (FDCPA)

3    • 15 U.S.C.§1692d(6),  Fair Debt Collection Practices Act (FDCPA)

4    • 15 U.S.C. §1692e(10), Fair Debt Collection Practices Act (FDCPA)

5 for strict statutory violations of the California Rosenthal Fair Debt Collection

6 Practices Act (CFDCPA) as follows: •

7    • California Code of Civil Procedure §1788 *et seq.*

8    **2.** Congress enacted the FCRA to establish rights to privacy over their credit

9 and financial information and to insure the "*[a]ccuracy and fairness of credit*

10 *reporting.* "FCRA provides several protections for consumers, including but not

11 limited to the *right to be notified of any negative/unfavorable information reported*

12 *in their name* and the *right to dispute inaccurate, outdated and/or incomplete*

13 *information* on their personal consumer credit files and reports.

14    **3.** FCRA regulates credit reporting agencies as well as creditors, collection

15 agencies and other parties who *provide consumer credit information to credit*

16 *reporting agencies and/or obtain and use the consumer credit reports.*

17 FCRA Section 623, 15 U.S.C.§1681s-2, imposes obligations on furnishers of

18 information to the credit reporting agencies. Furnishers must report *accurate*

19 *information*, correct and update erroneous information, and provide certain notices

20 to consumers pertaining to furnished information.

21    **4.** CCRAA was implemented to protect the credit information of California

22 consumers. CCRAA also regulates consumer credit reporting agencies and

23 furnishers of information with respect to personal, credit and other financial

24 information submitted and maintained in their consumer credit file. CCRAA in

25 California Civil Code §1785.25-1785.26 *refrains* furnishers of consumer credit

26 information from reporting information that *they know or should have known was*

27 *erroneous*, and obligates furnishers to *cease credit reporting* of information disputed

28 by consumers *after receiving a notice of such dispute* from individual consumers.

1   ·   **5.**   CCRAA provides consumers with the *right to be informed of negative*
2   *credit reporting* and the *right to dispute information in their credit reports*, which
3   they believe is incomplete and/or inaccurate. Consumers also have the *right to bring*
4   *civil actions against violators of any provision of the CCRAA with respect to their*
5   *rights and their credit, and to seek monetary damages*. California Civil Codes
6   §1785.19 and §1785.31.

7   **6.**   The FDCPA regulates the behavior of collection agencies attempting to
8   collect a consumer debt *on behalf of another entity*. The United States Congress has
9   found *abundant evidence of the use of abusive, deceptive, and unfair consumer debt*
10  *collection practices contribute to a number of personal bankruptcies, marital*
11  *instability, loss of jobs, and invasions of individual privacy*. Congress enacted the
12  FDCPA to *eliminate abusive consumer debt collection practices by debt collectors*,
13  to ensure that those debt collectors who refrain from using abusive debt collection
14  practices are not competitively disadvantaged, and to promote uniform State action
15  to *protect consumers against debt collection abuses described* in[15 U.S.C.§1692(a)-(e)].

16  **7.**   The FDCPA is a strict liability statute, which provides for actual and
17  statutory damages upon the showing of ***one violation***. The Ninth Circuit has held
18  that whether a debt collector's conduct violates the FDCPA should be judged from
19  the standpoint of the "*least sophisticated*" consumer. [Baker v. G.C. Services Corp.,
20  677 F.2d 775, 778 (9th Cir. 1982); *Swanson v. Southern Oregon Credit Service, Inc.*
21  869 F.2d 1222, 1227(9th Cir. 1988)]. This objective standard "ensure[s] that the
22  FDCPA *protects all consumers*, the *gullible as well as the shrewd ... the ignorant*,
23  the *unthinkable* and the *credulous*." [*Clomon v. Jackson*, 988 F.2d 1314, 1318-19
24  (2nd Cir. 1993)].

25  **8.**   To prohibit deceptive practices the FDCPA, at 15 U.S.C.§1692e,
26  outlaws the use of *false*, *deceptive*, and *misleading collection letters* and names a
27  non-exhaustive list of certain per se violations of *false* and *deceptive collection*
28  *conduct* 15 U.S.C.§1692e(1)-(16).

9. To prohibit *harassment and abuses* by debt collectors the FDCPA, at 15 U.S.C.§1692d, provides that a debt collector *may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt* and names a non-exhaustive list of certain per se violations of harassing and abusive collection conduct 15 U.S.C.§1692d(1)-(6). Among these per se violations prohibited by this section are: *any collection activities and the placement of telephone calls without meaningful disclosure of the callers identity* [15 U.S.C.§1692d(6)].

10. The FDCPA also prohibits, at15 U.S.C.§1692c, *without the prior consent of the consumer given directly to the debt collector*, or the *express written permission of a court of competent jurisdiction*, or as reasonably necessary to effectuate a post judgement judicial remedy, communication by a debt collector in connection with the collection of *any consumer debt.*, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law,

11. The RFDCPA *regulates collection agencies and original creditors* the creditor, the attorney of the creditor, or the attorney of the consumer debt collector. has determined that the banking and credit system and grantors of credit  to consumers are *dependent upon the collection of just and owing debts* and that *unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers*. The Legislature has further determined that there is a need that debt collectors *exercise their responsibility with fairness, honesty, and due regard for the debtor's rights* and that debt collectors must be *prohibited from engaging in unfair or deceptive acts or practices.*

# II. **JURISDICTION AND VENUE**

12. Jurisdiction of this Court arises under 47 U.S.C.§227(b)(3)  and 15 U.S.C. §1692(k)(d),  supplemental jurisdiction also exists for the state law claims pursuant to California Stat.§1788 and California Code of Civil Procedure §410.10.

13.   The following defendants:

- PORTFOLIO RECOVERY ASSOCIATES, LLC., a Virginia Corporation, doing business in California as a consumer debt collections company.

- HSBC BANK, a National consumer credit provider, doing business in California,

- EQUIFAX INC., a National consumer credit reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

- TRANS UNION LLC., a National consumer credit reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

- EXPERIAN INFORMATION SOLUTION INC., a National credit reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

- DOES 1 thru 10 inclusively,

all conduct business in the State of California and therefore, personal jurisdiction is established. The jurisdiction of this court is further conferred by 15 U.S.C.§1681p.

14.   Venue is proper pursuant to 28 U.S.C. §1391b and California Civil Procedure §395(a). Venue in this Ninth District is proper in that Plaintiff DEBORAH TUCK resides in San Diego County.

15.   The defendants all transact business in San Diego County, and the conduct complained of occurred in San Diego County.

16.   This is an action for damages which *exceeds $50,000.00 U.S. Dollars*

## III.   PRIVATE RIGHT TO ACTION

17. FCRA Sections 616 and 617, U.S.C. §1681o, create private right of action consumers can bring against violators of any provision of the FCRA with regards to their credit. In *DiMezza v. First USA Bank, Inc.* supra, the court confirmed that "[...] the plain language of [CRA Sections 616 and 617, 15 U.S.C. §1681n and §1681o] provide a private right of action for a consumer against furnishers of information who have willfully or negligently failed to perform their duties upon notice of a dispute. [...] there is a private right of action for consumers to enforce the

1   investigation reporting duties imposed on furnishers of information."

2      **18.**   *Gorman v. MBNA America Bank*, N.A., No. 06-17226 further established
3   Private Remedy Against Furnishers by consumers and FCRA Section 1681s-2(b)
4   *triggers Defendants' furnisher's liability under this section*, since Plaintiff made his
5   initial written disputes with the credit reporting agencies.

6      **19.**   California Civil Code §1785.15(f) expressly states that consumers
7   "have a right to bring civil action against anyone [...], who improperly obtains
8   access to a file, knowingly or willfully misuses file data, or fails to correct
9   inaccurate file data" concerning a consumer's credit report. Plaintiff has further
10  right to action pursuant to Cal. Civ. Code §1785.31(a), which states that Plaintiff as
11  "any consumer who suffers damages as a result of a violation of this title by any
12  person may bring an action in a court of appropriate jurisdiction against that person
13  to recover actual, statutory, and punitive damages together with attorneys fees and
14  costs, pursuant to 15 U.S.C. §1692(d)(5), together with such other and further relief
15  as the Court may deem reasonable and just under the circumstances.

16     **20.**   *Sanai v. Saltz, et al.*, 2009 Cal. App. LEXIS 83 (Cal. App. 2d Dist.
17  Jan. 26, 2009) established that consumers may re-plead their FCRA claims as
18  violations of the CCRAA and that State claims are not preempted by the FCRA.
19  In further support, courts have uniformly rejected creditors' and consumer reporting
20  agencies' arguments that the FCRA bars State law claims. See *Sehl v. Safari Motor*
21  discussion); *Harper v. TRW*, 881F. Supp. 294 (U.S.D.C. S.D. Mich. 1995);
22  *Coaches, Inc.*, 2001 U.S. Dist. Lexis 12638 (U.S.D.C. N.D. Cal. 2001);
23  *Rule v. Ford Receivables,* 36 F. Supp.2d 335 (U.S.D.C. S.D. Va. 1999);
24  *Watkins v. Trans Union*, 118F. Supp.2d 1217 (U.S.D.C. N.D. Ala. 2000);
25  *Swecker v. Trans Union*, 31 F. Supp.2d 536 (U.S.D.C. E.D. Va. 1998);
26  *Saia v. Universal Card Svc.*, 2000 U.S. Dist. Lexis 9494, 2000 Westlaw 863979
27  (U.S.D.C. E.D. La. 2000); *Sherron v. Private Issue by Discover*, 977 F. Supp.2d 804
28  (U.S.D.C. N.D. Miss 1997).

1  **21.** 15 U.S. C.§1692k(a) states that "... any debt collector who fails to comply

2  with any provision of this title with respect to any person is liable to such person in

3  an amount equal to the sum of-."

4  **22.** Cal Civ. Code §1788.30(a) states that "any debt collector who violates

5  this title with respect to any debtor shall be liable to that debtor only in an individual

6  action..."

# IV.   THE PARTIES

8  **23.** Plaintiff DEBORAH TUCK, (hereinafter "TUCK") is a natural person

9  and a resident of the State of California, San Diego North county, Vista, 92084.

10  **24.** Upon information and belief the following defendant's

11  • PORTFOLIO RECOVERY ASSOCIATES, LLC., (hereinafter "PRA")

12  is a Virginia Corporation, doing business in California as a consumer debt

13  collections company.

14  • HSBC BANK, (hereinafter "HSBC") is a National consumer credit

15  provider, doing business in California,

16  • EQUIFAX INC., (hereinafter EQUIFAX") is a National consumer

17  credit reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

18  • TRANS UNION LLC., (hereinafter "TU") is a National consumer

19  credit reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

20  • EXPERIAN INFORMATION SOLUTION INC., (hereinafter "EIS") is

21  a National credit reporting agency or ("CRA") as defined by 15 U.S.C. §1681(f).

22  • DOES 1 thru 10 inclusively, hereto,  will be referred to as

23  "credit  bureau defendants" or "credit agency defendants",  is a consumer creditor

24  which, among other activities, reports allegedly delinquent consumer debts to credit

25  bureaus and is a "furnisher" of negative consumer credit  to credit bureau defendants

26  **25.** Defendants Does 1 thru 10, are individuals and business entities, form

27  unknown, doing business in the State of California as credit reporting agencies, debt

28  collection agencies, creditors or other persons or entities which engage in credit

1  reporting and/or debt collection. Does 1-10, Inclusive, includes individuals or
2  business entities doing business in the State of California as credit reporting
3  agencies, debt collectors and/or creditors who have refused to delete accounts of
4  plaintiff that were procured through identity theft, mixed file or other manner of
5  recording an inaccurate credit account, even after plaintiff has notified them of the
6  false or inaccurate derogatory consumer credit information, and also who have
7  reported such accounts as derogatory credit references to credit reporting agencies
8  (hereinafter "CRA's").

9      **26.**   Plaintiff TUCK does not know the true names and capacities, whether
10  corporate, partnership, associate, individual or otherwise of defendants sued herein
11  as Does 1 through 10, inclusive, under the provisions of Section §474 of the
12  California Code of Civil Procedure. Plaintiff is informed and believes and on that
13  basis alleges that defendants Does 1 through 10, inclusive, are in some manner
14  responsible for the acts, occurrences and transactions as officers, directors or
15  managing agents of defendants or as its agents, servants, employees and/or joint
16  ventures and as set forth in this Complaint, and that each of them are legally liable
17  to plaintiff, as set forth below and herein:

18      a)   Said Officers, directors or managing agents of defendants PRA, HSBC,
19  EQUIFAX, TU, EIS, Does 1-10 inclusively, personally acted willfully with respect
20  to the matters alleged in this Complaint;

21      b)   Said Officers, directors or managing agents of defendants PRA, HSBC,
22  EQUIFAX, TU, EIS, Does 1-10 inclusively,  personally authorized, approved of,
23  adopted and/or ratified the acts alleged herein or the agents, servants, employees
24  and/or joint ventures of defendants did so act;

25      c)   Said Officers, directors or managing agents of defendants personally
26  participated in the acts alleged herein of the defendants;

27      d)   Said Officers, directors or managing agents of defendants PRA, HSBC,
28  EQUIFAX, TU, EIS, Does 1-10 inclusively, personally had close supervision of their

1    agents, servants, employees and/or joint ventures of defendants;

2         e.   Said Officers, directors or managing agents of defendants PRA, HSBC,

3    EQUIFAX, TU, EIS, Does 1-10 inclusively, personally

4    were familiar with the facts regarding the matters alleged herein;

5         f.   Said Officers, directors or managing agents of defendants personally

6    failed to investigate the circumstances appertaining to the acts alleged herein.

7    They also failed and refused to repudiate the herein alleged actions and failed to

8    redress the harm done to plaintiff TUCK. Further, said Officers, directors, or

9    managing agents of defendants PRA, HSBC, EQUIFAX, TU, EIS, Does 1-10

10   inclusively,  failed and refused to punish or discharge the said agents, servants,

11   employees and/or joint venturers of the defendants.

12   Plaintiff will seek leave to amend this complaint to set forth the true names and

13   capacities of the said fictitiously named defendants PRA, HSBC, EQUIFAX, TU,

14   EIS, Does 1-10 inclusively, as enumerated above, together with appropriate charging

15   allegations, when learned.

16        27.   Plaintiff is informed and believes, and thereon alleges that at all relevant

17   times herein each defendants PRA, HSBC, EQUIFAX, TU, EIS, Does 1-10

18   inclusively, , whether actually or fictitiously named, was the principal, joint venturer,

19   agent, servant or employee of each other defendant, and in acting as such within the

20   course, scope and authority of such relationship, took some part in acts and

21   omissions hereinafter set forth, by reason of which each defendant is liable to

22   plaintiff for the relief prayed for in this Complaint, and any future amended

23   Complaint. Further, plaintiff alleges that each act alleged herein, whether by  named

24   defendants or fictitiously named defendants or otherwise, was expressly authorized

25   or ratified, as these terms are used in California Civil Code Section §3294(b), by

26   each and every other defendants PRA, HSBC, EQUIFAX, TU, EIS, Does 1-10

27   inclusively,  herein, whether named or fictitiously named.

28

1    ·   **28.**   Collectively, these defendants PRA, HSBC, EQUIFAX, TU, EIS, Does

2   1-10 hereto will be referred to as "credit bureau defendants" or "credit agency

3   defendants", is a consumer creditor which, among other activities, reports allegedly

4   delinquent consumer debts to credit bureaus and is a *"furnisher" of negative*

5   *consumer credit to credit bureau defendants*.

6   # V.  FACTUAL ALLEGATIONS

7    **29.**   Plaintiff TUCK re-alleges and restates all fo the foregoing jurisdictional

8   allegations and general factual allegations in paragraphs 1 thru 28 herein.

9    **30.**   Plaintiff TUCK *has no prior or present established relationship* with the

10   defendants PRA, HSBC, EQUIFAX, TU, EIS, Does 1-10 hereto as it pertains to

11   *ANY* negative consumer debt account or *any other alleged accounts in any amounts*.

12    **31.**  Plaintiff TUCK *has no contractual obligation to pay* defendants PRA,

13   HSBC, EQUIFAX, TU, EIS, does 1-10 *anything*.

14    **32.** Plaintiff TUCK *has never given* defendants PRA and Does 1-10

15   *express written permission* to call Plaintiffs cellular phone more than fifty (50) times,

16   *many times more than once in the same business day*, between the dates of

17   March 28, 2013 at 11:56 am and today's date.

18    **33.**   Defendants PRA and Does 1-10 hereto called plaintiff's private cell

19   phone numbers (760)-840-1806, (760) 840-1809,(760) 840-1551 from phone

20   numbers (800) 772-1413, (866) 925-7109, (888) 772-7326  more than fifty (50)

21   times, *many times more than once in the same business day*, clearly violating

22   15 U.S.C. §1692c(a) of the (FDCPA).

23    **34.**   Plaintiff TUCK hereby moves this Ninth District honorable court to take

24   "Judicial Notice" that none of the more than fifty (50) harassing consumer debt

25   collection calls placed by defendants PRA and Does 1-10 between the dates of

26   March 28, 2013 at 11:56 am and today's date *were made for emergency purposes*,

27   clearly violating United Stated Code 47 U.S.C.§227(b)(1)(A)(iii), of the (TCPA).

28

1           **35.**   Plaintiff TUCK hereby alleges that between the dates of March 28, 2013

2    at 11:56 am and today's date defendants PRA and Does 1-10 called plaintiff's

3    private cell phone numbers (760)-840-1806, (760) 840-1809,(760) 840-1551 from

4    phone numbers (800) 772-1413, (866) 925-7109, (888) 772-7326 more than fifty

5    (50) times, *[many times more than once in the same business day and before the*

6    *morning hours of 8:00 am and again calling many times after the nightime hours of*

7    *none pm at night]* clearly violating the TCPA's strict statutory guidelines *by using*

8    *automatic telephone dialing system capabilities or artificial or prerecorded*

9    *messages or voices* on the plaintiff's cell phone numbers clearly violating section

10   47 U.S.C. §227(b)(1)(A) (TCPA) more than fifty (50) times.

11          **36.**   Between the dates of March 28, 2013 at 11:56 am and today's date,

12   defendants PRA and Does 1-10 called plaintiff TUCK's private cell phone numbers

13   (760)-840-1806, (760) 840-1809 and (760) 840-1551 from phone numbers (800)

14   772-1413, (866) 925-7109, (888) 772-7326 more than fifty (50) times *asserting a*

15   *right which it lacks to wit, the right to enforce* a consumer debt *allegedly* owed by

16   plaintiff TUCK.

17          **37.**   Between the dates March 28, 2013 at 11:56 am and today's date,

18   defendants PRA and Does 1-10 called plaintiff TUCK's private cell phone numbers

19   (760)-840-1806, (760) 840-1809 and (760) 840-1551 from phone numbers (800)

20   772-1413, (866) 925-7109, (888) 772-7326 more than fifty (50) times *failed to*

21   *identify that they were consumer debt collectors* trying to collect an alleged negative

22   consumer debt originating between the years of 2010 to the present date, allegedly

23   owed by plaintiff TUCK to the defendant's PRA and Does 1-10.

24          **38.**   On numerous occasions, the plaintiff has demanded in writing that

25   defendants PRA and Does 1-10 provide plaintiff TUCK with written "verification"

26   and consumer debt validation and defined by 15 U.S.C.§1692g(1)(2)(5)(b) and the

27   California Consumer Protection Statutes and Laws, as it pertained to any/all alleged

28   consumer debt[s], to date all defendant's in the above-entitled case have ignored all

1 attempted communications by phone, email, in writing, or otherwise, clearly
2 demonstrate willful and non-compliance with 47 U.S.C. §227(b)(1)(A), (TCPA).

3     **39.**   Defendants PRA and  Does 1-10 by and thru their above-described
4 actions violated the strict statutory guidelines set forth in §1692d of the Fair Debt
5 Collections Practices Act (FDCPA) *by engaging in conduct the natural*
6 *consequences of which is to harass, oppress, or abuse* the plaintiff by calling her
7 cell phone on more than fifty (50)  separate occasions over a three (3) year period
8 of time from March 28, 2013 at 11:56 am and today's date. [*Many of these cell*
9 *phone calls were placed before the early morning hours of 8:00 am and after the*
10 *late night hours of 9:00 pm and also placed multiple times on the same day]* all of
11 which the plaintiff has to pay for.

12     **40.**   Defendants PRA and  Does 1-10, *clearly violated* section §1692d(5) of
13 the Fair Debt Collection Practices Act (FDCPA) and at the *very same time* violated
14 the California Rosenthal Fair Debt Collection Practices Act Section §1788.17
15 (CFDCPA),  by calling plaintiff TUCK on his personal cell phones on more than
16 fifty (50) separate occasions and caused plaintiff TUCK's cellular phone to ring
17 repeatedly and continuously with the intent to *annoy, abuse, or harass him into*
18 *paying alleged consumer debts.*

19     **41.**   The same consumer debt allegedly owed to all of the defendant's herein
20 arose out of a transaction that was primarily for *personal, family, or household  purposes*.

21     **42.**    As plaintiff *has no business debt*, this same alleged *business debt*
22 *presently sought now by* defendants PRA and  Does 1-10, *could only have been used*
23 *for personal purposes*.

24     **43.**   During this same  period of time defendants PRA and  Does 1-10 the
25 ignored all written attempts by plaintiff TUCK to have the defendants PRA and
26 Does 1-10, *cease and desist* all collection activities *immediately, instead,* the
27 defendants commenced a three (3) year campaign *to harass, abuse and coerce*
28 *plaintiff TUCK into paying alleged consumer debt's* he does not owe.

# VI.   COUNT I
## VIOLATIONS OF THE TELEPHONE COMMUNICATIONS PRACTICES ACT (TCPA) 47 U.S.C. §227(b)(1)(A) AGAINST DEFENDANTS
### PRA DOES 1 THROUGH 10

44.   Plaintiff TUCK re-alleges and restates all fo the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 43 herein.

45.   In 1991, Congress enacted theTCPA[1] in response to a growing number of consumer complaints regarding certain illegal telemarketing practices.

46.   The TCPA regulates, among other things, the use of Voice and ATDS systems specifically, the plain language of Section §227(b)(1)(A) prohibits the use of Voice and ATDS systems to make any call to a wireless number, or to use, in the absence of *a emergency* or the *prior express written consent* of the called party[2].

47.   According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are *strictly prohibited* because, as Congress found, telephone calls using a Voice or an ATDS system are a *greater nuisance and invasion of privacy than live solicitation calls,* and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the cell phone minutes are used.[3]

48.   On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that Voice and ATDS debt collection calls to a wireless cell phone number by creditor or consumer debt collector are permitted only if the calls are made with the "*prior express written consent*" of the called party.[4]

49.   The FCC "emphasize[d] that *prior express written consent* is deemed to be granted only if the wireless number was provided during the transaction that resulted in the debt owed[5]

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codiified at 47 U.S.C. §227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §201 et. seq.
[2] 47 U.S.C. §227(b)(1)(A).
[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
[6] *See Lee v. Credit Mgmt., LP*, 2012 WL 113793, at *11 & n.17 (S.D. Tex. 2012).

**50.**    The Declaratory Ruling further dictates that: " a creditor on whose behalf an auto-dialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's TCPA rules. Calls placed by a *third party consumer debt collector on behalf of that creditor* are treated as if the *creditor itself placed the call*."[6]

**51.**    Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on the defendants PRA and  Does 1-10, *to demonstrate* that plaintiff TUCK gave her *prior express written consent* to any of the defendants PRA and  Does 1-10 to use a Voice or an ATDS system to call to her cell phones more than fifty (50) within the meaning of the statute. [7]

**52.**    At all times pertinent hereto, defendants PRA and  Does 1-10, has carried on its business by engaging in consumer debt collection practices. The defendants PRA and  Does 1-10, all of them have made telephone calls to the cellular telephones of consumers for purposes of collecting consumer debts allegedly owed to them.

**I.    First Challnged Practice:  Defendants PRA and DOES 1-10  Debt Collector's Calls To Cellular Telephones Using a Voice And/Or An ATDS system.**

**53.**    At all times pertinent hereto, the defendants PRA and  Does 1-10, as Debt Collectors, have utilized a Voice or an ATDS system  during consumer debt collection calls made to the cellular telephones of consumers who had not, during the transaction that resulted in the alleged consumer debt, previously given defendants PRA and  Does 1-10,  *express written permission or consent* to receive such calls.

**54.**    Calls utilizing Voice or an ATDS system's allow the defendant's PRA and  Does 1-10, to *collect more debt*.

**55.**    Defendants PRA and Does 1-10, utilized a Voice or ATDS system during debt collection calls which is one of this "industries newest innovations" an "agentless" automated system placing hundreds of calls per day, leaving recorded message reminders."

1    **56.**   At all times pertinent hereto, defendants PRA and Does 1-10, all

2    consumer debt collectors, have utilized a Voice or ATDS system including a

3    predictive dialer, to make debt collection calls to the private cellular telephones of

4    consumers who had not, during the transaction that resulted in the alleged consumer

5    debt, *ever previously given* defendants PRA and Does 1-10, *express written permission*

6    *or consent* to receive such calls.

7    **57.**   A predictive dialer *is* a Voice or ATDS system within the meaning of

8    the TCPA, *because,* it is equipment that, *when paired with certain computer*

9    *software, has the capacity to store or produce thousand upon thousands of telephone*

10   *numbers to be called in a single day, without human intervention to dial such*

11   *numbers at random, in sequential order, and/or from a database of numbers.*

12   **58.**   Voice or ATDS system developers, in recent years, have entered into

13   written contracts with all of its subsidiaries to use a Voice or ATDS predictive dialer

14   system's for example, the terms of the Collection Services Agreement utilized by

15   defendants PRA and Does 1-10 require that consumers be contacted "via mail and

16   predictive dialer in an effort to collect on past due balances." *See Lee v. Credit*

17   *Mgmt., LP,* 2012 WL 113793, at *11 & n.17 (S.D. Tex. 2012).

18   **59.**   Calls utilizing Voice or ATDS system's allow defendant's PRA and

19   Does 1-10 *to collect more debt.*

20   **60.**   At all times pertinent hereto, defendant's PRA and Does 1-10 has been

21   aware that its employees/personnel have utilized an Voice or ATDS system because,

22   *inter alia*, the use of a Voice or ATDS system *is standard industry practice among*

23   *consumer debt collectors.*, the "Voice or ATDS system's predictive dialer enables us

24   to reach more of our client's while maintaining a cost-effective approach"and that

25   the "dialer *** completes call campaigns more quickly*** conducts the most

26   effective calling strategies ***."

27   **61.**   On information and belief, plaintiff TUCK believes and hereby alleges

28   that within the past six (6) years, defendant's PRA and Does 1-10 have placed

1   ten of thousands of Voice and/or ATDS system calls to the cellular telephones of

2   consumers they allege owe them monies, or, are part of a list of thousands of

3   consumer debts bought from the original creditor's of these same alleged debts

4   *who had not,* during the transaction that resulted in these same alleged consumer

5   debt's *previously given* defendant's PRA and Does 1-10,*prior written express*

6   *consent* to place these debt collection calls by these same called parties.

7

**II.    Second Challenged Practice: Defendants PRA and DOES 1-10**
8   **Making Calls To Cellular Telephones Using A Voice And/Or An ATDS**

9       **62.**   At all times pertinent hereto, defendant's PRA and Does 1-10 has

10  utilized a Voice and/or ATDS system during debt collection calls to the cellular

11  telephones of consumers who had not, during the transaction that resulted in the

12  consumer debt, previously given defendant's PRA and Does 1-10 *express written*

13  *consent* to receive such calls.

14      **63.** At all times pertinent hereto, defendant's PRA and Does 1-10 has also

15  utilized an Voice and/or ATDS system including a predictive dialer, to make

16  consumer debt collection calls to the cellular telephones of consumers who had not,

17  during the transaction that resulted in the debt, previously given defendant's PRA

18  and Does 1-10 *express written consent* to receive such calls.

19      **64.**   On information and belief, within the past six  years, defendant's PRA

20  and Does 1-10 has made thousands of Voice and/or ATDS calls to the cellular

21  telephones to consumers who had not, during the transaction that resulted in the

22  alleged debt, previously given defendant's PRA and Does 1-10 *prior express written*

23  *consent* to receive such calls.

24  **III.   Plaintiff DEBORAH TUCK●**

25      **65.** ●  Plaintiff DEBORAH TUCK is a "person" as defined by

26  47 U.S.C.§153(39).

27      **66.**   In 2013, Plaintiff TUCK began receiving automated harassing telephone

28  calls from defendant's PRA and Does 1-10 on her cellular telephones

1     **67.**  For Example, Plaintiff TUCK's T-Mobile cell phone records show that

2 she received incoming calls placed from defendant's PRA and Does 1-10

3 staff/personnel from phone numbers (800) 772-1413, (866) 925-7109,

4 (800) 501-0909 (888) 772-7326 more than fifty (50) times on at least <u>one</u> of the

5 following dates:

6

7     a.     March 28, 2013;       (two calls from Phone # (800) 772-1413)

8     a.     March 29, 2013;       (three calls from Phone # (800) 772-1413)

9     c.     April 03, 2013;       (four calls from Phone # (800) 501-0909)

10     d.     April 09, 2013;       (eight calls from Phone # (800) 772-1413)

11     e.     April 15, 2013;       (three calls from Phone # (800) 772-1413)

12     f.     May 02, 2013;       (four calls from Phone # (866) 925-7109)

13     g.     May 12, 2013;       (three calls from Phone # (800) 772-1413)

14     h.     June 04, 2013;       (two calls from Phone # (800) 772-1413)

15     i.     June 09, 2013;       (three calls from Phone # (866) 925-7109)

16     j.     June 14, 2013;       (four calls from Phone # (800) 772-1413)

17     k.     June 17, 2013;       (four calls from Phone # (800) 772-1413)

18     **70.**  Defendant's PRA and Does 1-10 placed a multitude of other calls to

19 defendant TUCK's private cell phone numbers over the past three years,

20 *more than this defendant cares to document in this Complaint* , but the finding of

21 *the exact amount* of these *multiple harassing calls* can be found out by plaintiff

22 TUCK during the discovery process of this Complaint for Damages and

23 Injunctive Relief set for Jury trial.

24     **69.**  Plaintiff TUCK *has no relationship with the* defendant's PRA and

25 Does 1-10 there exists *no contract* between plaintiff TUCK and defendant's PRA

26 and Does 1-10 *for arbitration or otherwise*.

27     **70.**  Defendant's PRA and Does 1-10 *utilized a predictive dialer to make all*

28 *of the calls described above.*

71.   All of the calls described above were placed by defendant's PRA and Does 1-10 to plaintiff TUCK's cellular phones *solely to collect a consumer debt allegedly owed to* defendant's PRA and Does 1-10, by the plaintiff.

73. (TCPA) 47 U.S.C. §227(b)(1)(A) states in part;

**(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT Voice and/or ATDS systems-**

**(1)** PROHIBITIONS - It shall be unlawful for any person within the United States, or person outside the United States if the recipient is inside the United States -

**(A)** to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice .

74. Defendant's PRA and Does 1-10 *have demonstrated willful and knowing non-compliance* with 47 U.S.C. §227(b)(1)(A) *by using an automatic telephone dialing system* to call the plaintiff's cell phone numbers from March 28, 2013 to the present date more than fifty (50) times. All of these same call's were made to plaintiff TUCK's private cell phone numbers (760)-840-1806, (760) 840-1809 and (760) 840-1551 from phone numbers (800) 772-1413, (866) 925-7109, (888) 772-7326 more than fifty (50) times even thought the Plaintiff TUCK's cell phone numbers (760) 840-1806 (760) 840-1809 and (760) 840-1551 have all been listed on the "National Do Not Call List" since August 20, 2010.

75.   Defendant's PRA and Does 1-10 have committed more than fifty (50) separate strict statutory violations of 47 U.S.C. §227(b)(1)(A). Accordingly Plaintiff TUCK is *entitled* to statutory damages in the amount of $500 dollars U.S. for the first *"unintentional"* consumer collection call made to plaintiff TUCK by the Defendant's PRA and Does 1-10 on March 28, 2013, pursuant to 47 U.S.C. §227(b)(1)(A).

76.   Plaintiff TUCK is *also entitled to* treble damages in the amount of $1500.00 U.S. dollars for *each* of the additional forty nine (49) *"intentional"* debt collection calls placed by defendant's PRA and Does 1-10 to the plaintiff TUCK's

1  private cell phone numbers (760)-840-1806, (760) 840-1809 and (760) 840-1551

2  from phone numbers (800) 772-1413, (866) 925-7109, (888) 772-7326 more than

3  forty nine (49) times after this initial first "*unitentional*" call pursuant to 47 U.S.C.

4  §227(b)(3)(B).  Defendant's PRA and Does 1-10 have demonstrated *willful and*

5  *knowing  non-compliance* with 47 U.S.C. §227(b)(3)(B) as all of those forty nine

6  (49) calls were all "*intentional*", meaning the last forty nine (49) debt collection

7  calls placed by defendant's PRA and Does 1-10 to plaintiff TUCK's cellular phones

8  are *subject to treble damages, or $1500 per call* pursuant to 47 U.S.C.§227(b)(3)(B).

9      77    Defendant's PRA and Does 1-10 have also demonstrated *willful or*

10  *knowing non-compliance* with 47 U.S.C. §227(b)(1)(A)(iii) as forty nine (49) of

11  these same consumer debt collection calls made by the defendant's PRA and

12  Does 1-10 to the plaintiff are subject to *treble damages* pursuant to U.S.C.§227(b)(3)

13  as these calls were *intentional* .

14      **78.**   Plaintiff TUCK and defendant's PRA and Does 1-10 *do not* have an

15  *established business relationship* within the meaning of 47 U.S.C. §227 *et seq.*

16      **WHEREFORE**, plaintiff TUCK demands judgement for damages against

17  defendant's PRA and Does 1-10 for actual, statutory, and punitive damages,

18  attorney's costs and fees pursuant to 15 U.S.C. §227(b)(1)(A), together with such

19  other and further relief as the Court may deem reasonable and just under the

20  circumstances.

21                    # VII.   COUNT II
   **VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT(FDCPA) 15**
22  **U.S.C. §1692(c)(a)(1) AGAINST DEFENDANTS**
   **PRA and DOES 1 THROUGH 10**
23

24      **79.**    Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional

   allegations and general factual allegations in paragraphs 1 thru 78 herein.
25

26      **80.   15 U.S.C. §1692(c)(a)(1) states in part;**

27      COMMUNICATION WITH THE CONSUMER GENERALLY
   without the *prior express written consent* of the consumer given directly
   to the consumer debt collector or the *express permission* of a court of
28  competent jurisdiction, a consumer debt collector *may not* communicate
   with the consumer in connection with the collection of the debt.

81.   As previously alleged, defendant's PRA and Does 1-10 are all "debt collectors" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. Section §1692 *et seq.* defendant's PRA and Does 1-10 are all engaged in conduct proscribed by 15 U.S.C. Section §1692e(8), namely, "Communicating or threatening to communicate to any person negative consumer credit information which is known or which should have known to be false, including the failure to communicate that a disputed consumer debt is disputed" plaintiff TUCK reserves the right to allege other violations of the FDCPA as the facts of this case unfold.

82.   Plaintiff TUCK alleges defendant's PRA and Does 1-10 all *violated other statutory provisions* of the Federal Fair Debt Collection Practices Act, as follows:

a. 15 U.S.C. Section §1692d:  defendant's PRA and Does 1-10 and engaged in consumer debt collection efforts after they knew, and had determined, that it had no basis for continuing to pursue  plaintiff TUCK that had the natural consequences of harassing, abusing and oppressing the plaintiff *in concert or in conjuction or unison with other named defendants contained herein in the above-entitled federal complaint.*

b. 15 U.S.C. Section §1692e:  defendant's PRA and Does 1-10 and *have threatened action, or taken action, including threats of negative credit reporting, threats of lawsuits and implicit or explicit threats of derogatory negative credit reporting, that cannot legally be taken because the alleged debt is not* plaintiff TUCK's *consumer debt.*

c. 15 U.S.C. Section §1692f:  defendant's PRA and Does 1-10 have each used unfair or unconscionable means to collect or attempt to collect the alleged debts. Specifically, each has attempted to collect amounts not expressly authorized by law or by any agreement. In essence, there is no agreement and no obligation by which plaintiff Tuck owes any monies to defendant's PRA and Does 1-10, yet, defendant's each and every one of them persists in its collection efforts to this day .

83.    Defendant's PRA and Does 1-10 knew, or should have known, that they placed more than fifty (50) Voice and/or automated ADTS telephone calls to plaintiff TUCK's private cell phone numbers (760)-840-1806, (760) 840-1809 and (760) 840-1551 from phone numbers (800) 772-1413, (866) 925-7109, (888) 772-7326 more than fifty (50) times between the dates of March 28, 2013 to the present day, were both inconvenient, annoying, *deliberately and intentionally* committing more than forty nine (49) separate and distinct statutory violations of 15 U.S.C. §1692(c)(a) . *Every single one* of these illegally placed calls was made by defendant's PRA and Does 1-10 *were placed without* the *prior express written consent* of the consumer plaintiff TUCK.

84.    As a result of these statutory violations of the Federal Fair Debt Collection Practices Act by defendant's PRA and Does 1-10 inclusively, plaintiff TUCK has suffered general and special damages according to proof, and is entitled to a statutory penalty for each separate violation of this Act.

**WHEREFORE,** Plaintiff TUCK demands judgement for damages and injunctive relief against defendant's PRA and Does 1-10 inclusively, for actual statutory and punitive damages, attorney's fees and costs pursuant to 15 U.S.C. §1692(c)(a), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# VIII.   COUNT III
## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) §1692(d)(5) BY DEFENDANTS PRA andDOES 1 THROUGH 10

85.    Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 84 herein.

86. **15 U.S.C. §1692(d) states in part;**
A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**87. 15 U.S.C. §1692(d)(5) states in part;**
<u>Causing a telephone to ring or engaging any person in a telephone</u>
<u>conversation repeatedly or continuously with the intent to annoy, abuse,</u>
<u>or harass any person at the called number.</u>

**88**   Defendant's PRA and Does 1-10 inclusively, violated 15 U.S.C. §1692(d)(5) by calling plaintiff TUCK's private cell phone numbers (760)-840-1806, (760) 840-1809 and (760) 840-1551 from phone numbers (800) 772-1413, (866) 925-7109, (888) 772-7326 more than fifty (50) times directly causing the plaintiff's personal cell phone to ring repeatedly and continuously with the *intent* to *annoy, abuse, or harass* the plaintiff.  Every single one of these placed calls was made by defendant's PRA and Does 1-10 inclusively, *without* the *prior express written consent* of the consumer,  Plaintiff TUCK.

**89.**   During this same two and a half month  period of time between March 28, 2013 to the present day defendant's PRA and Does 1-10  staff/personnel intentional and repeatedly called plaintiff TUCK more than fifty (50) times on her personal cell phone number this has caused this 54 year old plaintiff undue *stress, confusion,* and *long term nervousness* and *embarrassment*, including *unexpected increased cell phone bills that this plaintiff could ill afford.*

**90**. Plaintiff Tuck alleges that defendant's PRA and Does 1-10 inclusively, caused his cell phones to ring on more than fifty (50) separate occasions between the dates of  March 28, 2013 to the present day, by causing her to answer these calls and either engage in a  conversation with  defendant's PRA and Does 1-10 staff or,  have to listen to numerous  pre-recorded messages left by defendant's PRA and Does 1-10 inclusively, staff on TUCK'S cell phone message service accounts, which plaintiff TUCK *has to pay monies for*.

**WHEREFORE,** Plaintiff TUCK demands judgement against  defendant's PRA and Does 1-10 inclusively, for actual, statutory, and punitive damages, attorneys fees and costs, pursuant to 15 U.S.C. §1692(d)(5),  together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# VIIII.   COUNT IV

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)**
**15 U.S.C. §1692(d)(6) BY DEFENDANTS**
**PRA and DOES 1 THROUGH 10**

**91.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 90 herein.

**92. 15 U.S.C. §1692(d)  states in part;**

> A consumer debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged consumer debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> ***The placement of telephone calls without meaningful disclosure of the caller's identity.***

**93.**   Defendant's PRA and Does 1-10 staff/personnel violated 15 U.S.C. §1692(d)(6) (FCPA) by placing more than fifty(50) automated and/or voice calls to plaintiff TUCK'S cell phones between the dates of March 28, 2013 and the present day. On several occasions these very same calls were made without meaningful disclosure of the caller defendant's PRA and Does 1-10 true identity. All fifty (50) calls were independently placed at different times.

**94.**   Every single one of these more than thirty fifty (50) phone calls placed defendant's PRA and Does 1-10 staff/personnel were being made *without the prior express written consent* of the consumer plaintiff TUCK.  This added to the plaintiff's daily confusion and anxiety about these very same calls.

> ***i.e.***   *Who is this person or machine on the other end of the phone?*
> *Why are they calling me almost every day, many times a day?*
> *Why are they leaving these strange messages?*
> *Why won't the people (when they do come on the line)*
> *not listen to me and stop calling me?*

**95.**   Defendant's PRA and Does 1-10 staff/personnel are using the plaintiff's age (53 years old) and inability to properly hear correctly in both ears against her, by continually calling her *sometime's more than once a day*, to *harass, annoy* and *coerce* herinto paying an *alleged grossly inflated, non-existent consumer debt.*

1    ,    **96.**   Defendant's PRA and Does 1-10 staff/personnel *thru mailed dunning*
2    *letters and phone numerous harassing phone calls* to plaintiff TUCK
3    *threatening* to report this same alleged non-existent consumer debt item to be
4    placed by defendant's PRA and Does 1-10 staff/personnel on all three National
5    consumer credit reporting agencies that record and report Plaintiff TUCK's
6    credit. ***These very same illegal business activities border on the edge of***
7    ***professional business extortion practices.***

8    **WHEREFORE,** Plaintiff TUCK demands judgement for damages
9    against defendant's PRA and Does 1-10 for actual, statutory, and punitive
10   damages, attorney's costs and fees pursuant to 15 U.S.C. §1692(d)(6) (FDCPA)
11   together with such other and further relief as the Court may deem reasonable and just
12   under the circumstances.

## X.   COUNT V
### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
### 15 U.S.C.§1692(e)(10) BY DEFENDANTS
### PRA and DOES 1 THROUGH 10

**97.**   Plaintiff TUCK re-alleges and restates all of the foregoing
jurisdictional allegations and general factual allegations in paragraphs 1 thru 96
herein.

**98**   Defendant's PRA and Does 1-10 staff/personnel  violated 15 U.S.C.
§1692(e)(10) (FDCPA) by the use of false representation or deception means to
collect or attempt to collect a debt or to obtain information concerning a consumer.

**99**   Defendant's PRA and Does 1-10 staff/personnel staff *lied* to Plaintiff
TUCK on numerous occasions from March 28,2013 to the present day to gain
information about the Plaintiff TUCK.

**100.**   15 U.S.C. §1692(e) states in part;

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> consumer debt. Without limiting the general application of the
> foregoing. The following conduct is a violation of this section:

**101.**   **15 U.S.C. §1692(e)(10) states in part;**

The use of any false representation or deceptive means to collect or attempt to collect a consumer debt or obtain information about a consumer.

**102.**   Plaintiff TUCK received many more than (50) illegally placed calls by defendant's PRA and Does 1-10 staff/personnel *many months after* he had requested in writing for *certification* of the alleged consumer debt pursuant to U.S.C.§1692(g)(1)(2)(5)(b), (FDCPA).

**103**   Defendant's PRA and Does 1-10 staff/personnel not only *ignored* this same *demand* for *certification/validation* of the alleged consumer debt, these above named consumer business entities commenced a campaign for many years to harass, oppress, threaten, confuse and cause the plaintiff TUCK experience long term emotional distress and confusion.

**104.**   These same *more than* fifty (50) illegally placed calls by defendant's PRA and Does 1-10 staff/personnel constitute more than fifty (50) separate and distinct statutory violations as defined by 15 U.S.C. §1692g(1)(2)(5)(b) of the (FDCPA) statutes of the United States of America and the California Consumer Protection Statutes/Laws.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against defendant's PRA and Does 1-10 staff/personnel for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §1692(e)(10)(FDCPA), together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# XI.   COUNT VI
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 et seq. WILLFUL OR NON-COMPLIANCE BY DEFENDANTS PRA, HSBC, EQUIFAX, TU, EIS, and DOES 1-10

**105.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 104 herein.

1    **106.**   Defendant PRA is a Virginia corporation who in the business of
2    buying/collecting allegedly owed consumer debts, doing business in California.
3    HSBC is a consumer creditor doing business in California, EQUIFAX INC., is a
4    National consumer credit reporting agency (hereinafter "CRA"). TRANS UNION
5    LLC., is a National consumer credit reporting agency (hereinafter "CRA").
6    EXPERIAN INFORMATION SOLUTIONS., is a National consumer credit
7    reporting agency (hereinafter "CRA").

8    **107.**   In or around December 13, 2014 plaintiff TUCK, who is not a minor,
9    checked her consumer credit report from all three national credit reporting
10   agencies, Experian, Equifax, and Trans Union (collectively "CRAs"), and
11   discovered multiple credit accounts reported by Defendants's PRA, HSBC,
12   EQUIFAX, TU, EIS, and DOES 1-10 collectively placed _at least_ _three_ separate
13   and individual credit line accounts in negative status.  These negative credit line
14   accounts were unfamiliar to plaintiff TUCK, as she did not recall ever opening
15   them and _she was never informed by these furnishers_ of _their negative credit_
16   _reporting_ activities.

17   **108.**   Clear evidence of two (2) of these negative accounts which were
18   placed by PRA and HSBC on plaintiff TUCK's "TU" and EXPERIAN consumer
19   credit reports is **[Attached hereto as "EXHIBIT A"]** with "PRA" partial account
20   number #515597001868****, further evidence of a third negative accounts which
21   were placed by PRA and HSBC on plaintiff TUCK's consumer credit reports with
22   "PRA" is **[Attached hereto as "EXHIBIT B"]** partial account number HSBC -
23   5597001868****.

24   **109.**   On or about February 2015 Plaintiff TUCK contacted the defendant's
25   PRA, HSBC, EQUIFAX, TU, EXPERIAN and Does 1-10 and disputed in writing the
26   unknown negative credit accounts being reported by the defendants's collectively,
27   pursuant to 15 U.S.C. §1681s-2(b) (FCRA). To date none of the defendant's have
28   provided Plaintiff TUCK with certification or validation of the debt.

**110.** On or about February 18, 2015, following his credit bureau disputes, plaintiff TUCK sent letters to defendants's PRA, all three(CRA's) EQUIFAX, TU, EIS and DOES 1-10 in which she *demanded* documentation substantiating the existence, ownership and *accuracy* of the negative consumer credit line accounts reported by each of them, *otherwise their immediate deletion from her credit file*.

**111.** Upon receipt of plaintiff's disputes these same defendants's PRA, all three(CRA's) EQUIFAX, TU, EIS and DOES 1-10 each continued to report disputed accounts to all of the CRAs, without notice that the accounts had been disputed by plaintiff, all throughout the investigation period and thereafter. They further *failed to properly address* plaintiff's direct disputes with them and *failed to provide for her requested* "verification" and "validation" for these disputed negative consumer accounts.

**112.** On or about June of 2015, plaintiff TUCK followed up with the defendants's PRA, all three(CRA's) EQUIFAX, TU, EIS and DOES 1-10 on multiple occasions in writing, re-submitted her requests and *demanding immediate deletion of the unverified accounts due to lack of verification*, but each of these correspondences went *unanswered, ignored,* or were improperly handled and responded to, all of her efforts and correspondences proved *unsuccessful* in attaining *any of the above-named defendant's cooperation to date*.

**113.** Regardless of plaintiffs' numerous attempts to seek defendant's cooperation defendants's PRA, all three(CRA's) EQUIFAX, TU, EIS and DOES 1-10 each one of them continuously, to date, failed to answer back to plaintiff TUCK with appropriate proof of investigation and verification of the information in dispute, and failed to take corrective action.

**114.** These inaccurate consumer credit accounts negatively reflect upon plaintiff TUCK as a consumer, borrower/debtor and they negatively impact his creditworthiness and financial standing.

**115.**   Plaintiff TUCK has suffered financial and emotional distress as a direct result of defendants's PRA, all three(CRA's) EQUIFAX, TU, EIS and DOES 1-10 direct violations, which include but are not limited to the following:

   a.   Actual damages arising from monetary losses related to denials to new credit, loss of use funds, loss of credit and loan opportunities, excessive and/or elevated interest in financial charges;

   b.   Out of pocket expenses associated with communicating with defendant's, disputing the negative credit information, and fees paid to attorneys and credit professionals for the assistance attained in the process;

   c.   Emotional distress and mental anguish associated with having derogatory credit information transmitted about plaintiff TUCK to other people both known and unknown;

   d.   Decreased credit score and creditworthiness, which may result in the inability to obtain credit, employment or affordable housing without larger security deposits on future attempts.

**116.**   Defendants's PRA and DOES 1-10  knowingly and willfully violated the strict statutory guidelines of the FCRA, violations include, but are not limited to the following:

   a.   Failing to inform plaintiff TUCK about negative credit reporting made on her credit report, prior to within five (5) days of furnishing a collection account to the CRAs, in violation of (FCRA) 15 U.S.C. §1681s-2(a)(7)(A),;

   b.   Failing to conduct a proper and complete investigation of disputed negative consumer credit information upon the receipt of plaintiff TUCK's disputes in violation of (FCRA) 15 U.S.C.§1681s-2(a)(8)(E);

   c.   Verifying disputed accounts with the CRA's prior to conducting a thorough investigation and without having substantiating support for such verification;

d.   Reporting disputed information to the CRAs, without notice of plaintiff's dispute, during the investigation period and prior to providing verification of accuracy in violation of (FCRA) 15 U.S.C.§1681s-2(a)(3);

e.   Out of pocket expenses associated with the communication with defendants's PRA, all three (CRA's) EQUIFAX, TU, EIS and DOES 1-10 , having to continually dispute the negative consumer credit information, and fees paid to attorneys and credit professionals for their assistance attained in the process;

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against defendants's PRA, all three(CRA's) EQUIFAX, TU, EIS and DOES 1-10 for actual, statutory, and punitive damages, attorney's costs and fees pursuant to (FCRA) 15 U.S.C. §1681 *et seq.* together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## XII.   COUNT VII
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681b WILLFUL AND/OR KNOWING NON-COMPLIANCE AGAINST DEFENDANT'S PRA, HSBC, EQUIFAX, TU, EIS, AND DOES 1-10

**117.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 116 herein.

**118.**   The (FCRA), 15 U.S.C.§1681b  defines the *permissible purpose* for which a person may obtain a consumer credit report or [credit report hard pull].

**119.**   Such *permissible purposes* as defined by (FCRA) 15 U.S.C.§1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

**120.**   Plaintiff TUCK has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, nor received a bona fide offer of credit from any/all of the defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10.

**121.** At *no time* did plaintiff TUCK give her consent for defendant's PRA, HSBC and DOES 1-10, to acquire her consumer credit report from *any* consumer reporting agency ("CRA").

**122** Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, have demonstrated willful and/or knowing non-compliance with the (FCRA), 15 U.S.C.§1681b and repeatedly violating plaintiff TUCK's right to privacy

**123.** Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10 had a *duty* to properly ascertain if there was any legitimate permissible purpose before obtaining plaintiff TUCK's consumer credit report and defendants all *breached said duty by failing to do so*.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, for actual, statutory, and punitive damages, attorney's costs and fees pursuant to 15 U.S.C. §1681b together with such other and further relief as the Court may deem reasonable and just under the circumstances.

# XIII.  COUNT VIII
**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT AGAINST DEFENDANT'S PRA, HSBC, EQUIFAX, TU, EIS, AND DOES 1-10**

**124.** Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 123 herein.

**125.** Within two years prior to the filing of the complaint in this action, defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, willfully and negligently violated the California Consumer Credit Reporting Agencies Act in at least the following ways:

a. By willfully and negligently failing, in the furnishing of derogatory credit information for the consumer report concerning plaintiff TUCK, to follow reasonable procedures to assure maximum possible accuracy of the

1  damages and statutory penalties for willful statutory violations of the California
2  Consumer Credit Reporting Agencies Act.

3      **WHEREFORE**, Plaintiff TUCK demands judgement for damages against
4  defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, for actual,
5  statutory, and punitive damages, attorney's costs and fees pursuant to California
6  Consumer Credit Reporting Agencies Act  together with such other and further
7  relief as the Court may deem reasonable and just under the circumstances.

8

9  ### XIIII.   COUNT VIIII
10  **VIOLATIONS OF THE CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION
PRACTICES ACT CALIFORNIA CIVIL CODE §1788 *et seq.*
BY DEFENDANT'S PRA, HSBC, EQUIFAX, TU, EIS,**
11  **AND DOES 1-10**

12      **128.**   Plaintiff TUCK re-alleges and restates all of the foregoing
13  jurisdictional allegations and general factual allegations in paragraphs 1 thru 127 herein.

14      **129.**   Plaintiff TUCK is a *consumer* within the meaning of
15  15 U.S.C. §1692 *et seq.* (FDCPA)

16      **130**   Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, are
17  seeking to collect an *alleged consumer debt* from plaintiff TUCK as defined by
18  California Civil Procedure §1788(f) (CRFDCPA).

19      **131.**   The alleged defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND
20  DOES 1-10 consumer debt account in question is a *consumer transaction* as
21  defined by California Civil Procedure §1788(e), (CRFDCPA) as the plaintiff
22  TUCK has *allegedly received property, services or money* from defendant's PRA,
23  HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, or an extension of credit, and such
24  property, services or money was used primarily for personal, family or household
25  purposes.

26      **132.**   Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, also
27  violated §1788.11(d) of the California Rosenthal Fair Debt Collection Practices
28  Act (CFDCPA) by placing collection calls to the plaintiff's cellular phone

1  repeatedly and continuously so as to annoy, harass or embarrass plaintiff TUCK.

2  Plaintiff  TUCK *contends she has always paid all of his consumer bills in as timely*

3  *manner as possible*.

4      **133.**  Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10,

5  violated §1788.17 of the California Rosenthal Fair Debt Collection Practices Act

6  (CFDCPA) by placing numerous harassing debt collection calls to the plaintiff with

7  *such frequency* as to be *unreasonable* and to *constitute direct intentional*

8  *harassment* of the plaintiff under the circumstances.

9      **134**.  Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, also

10 violated Section §1788.17 of the California Rosenthal Fair Debt Collections

11 Practices Act (CFDCPA) by *continuously* failing to comply with the statutory

12 regulations contained within the United States Fair Debt Collection Practices Act

13 (FDCPA) 15 U.S.C. §1692 *et seq.*

14     **WHEREFORE,** Plaintiff TUCK demands judgement for damages against

15 Defendant's PRA, HSBC, EQUIFAX, TU, EIS,AND DOES 1-10, for actual

16 statutory and punitive damages, attorney's fees pursuant to §1788.30(b) and costs

17 pursuant to §1788.30(c), the California Rosenthal Fair Debt Collection Practices

18 Act CC1788 *et seq.,* together with such other and further relief as the Court may

19 deem reasonable and just under the circumstances.

20 # XV.   COUNT X
   ### FAILURE TO ESTABLISH PROPER PROCEDURES 15 U.S.C. §1681 *et seq.*
21 ### AGAINST ALL THREE CRA'S - [EQUIFAX, TU, EIS], AND DOES 1-10

22     **135.**  Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional

23 allegations and general factual allegations in paragraphs 1 thru 134 herein.

24     **136.**  Defendant CRA's EQUIFAX, TU, EIS,AND DOES 1-10, violated

25 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures

26 to assure maximum possible accuracy in the preparation of the consumer credit line

27 report and consumer credit line files it published and maintains concerning

28 plaintiff TUCK.

**137.**   As a result of this conduct, action and inaction of defendant's CRA's EQUIFAX, TU, EIS,AND DOES 1-10 plaintiff TUCK suffered damages by loss of credit, denial of rental of houses and commercial buildings, loss of ability to purchase and benefit from credit, mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

**138.**   Defendants CRA's EQUIFAX, TU, EIS,AND DOES 1-10 conduct, action, and inaction was willful, rendering it liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, it was clearly negligent, entitling plaintiff to recover under 15 U.S.C. §1681o.

**139.**   When plaintiff TUCK attempted to dispute the inaccuracies with the CRA's, the results of the CRA's purported investigations reported that defendant's PORTFOLIO RECOVERY ASSOCIATES, HSBC and all three CRA's EQUIFAX, TU, EIS, AND DOES 1-10 had verified the information **as accurate**.

**140.**   Defendant's PORTFOLIO RECOVERY ASSOCIATES, HSBC and all three CRA's EQUIFAX, TU, EIS, AND DOES 1-10 received notices of the disputes under 15 U.S.C. §1681i(a)(2). PORTFOLIO RECOVERY ASSOCIATES and HSBC was then *obligated to reinvestigate* these same disputes under 15 U.S.C. §1681s-2. All three CRA's EQUIFAX, TU, EIS, AND DOES 1-10 reinvestigation should have easily determined that the negative trade line was disputed and that the report it was furnishing was inaccurate, incomplete or could not be verified.

**141.**   Under 15 U.S.C. §1681s-2(b)(1)(E), PORTFOLIO RECOVERY ASSOCIATES and HSBC and all three CRA's then had a *duty to modify the disputed negative trade line information, delete the disputed negative trade line information, or permanently block the reporting of the disputed negative trade line information.*

**142.**   However,  PORTFOLIO RECOVERY ASSOCIATES and HSBC *allegedly verified* the same negative trade line *that included inaccurate* and

1   *unverified negative credit line information*.

2   **143.**   Defendants PORTFOLIO RECOVERY ASSOCIATES and HSBC

3   violated 15 U.S.C. §1681s-2(b)(1) by failing, upon receiving notice of dispute by

4   plaintiff from the defendant CRA's to conduct a lawful investigation; by failing to

5   review all relevant information provided by the defendant CRA's; by failing to

6   report the result of its investigation to the CRA's; if the investigation finds that the

7   information is incomplete or inaccurate, by failing to report those results to the

8   defendant CRA's and/or if the information is disputed by plaintiff TUCK is found

9   to be inaccurate or incomplete or cannot be verified after any reinvestigation by

10   failing to modify, delete or permanently block that item of information.

11   **144.**   As a direct result of *all of this above-described conduct* by

12   defendants CRA's EQUIFAX, TU, EIS,AND DOES 1-10, their actions and

13   inactions, their continued refusals to acknowledge *anything* in writing or otherwise

14   literally ignoring plaintiff TUCK. Plaintiff TUCK has suffered damages by loss of

15   credit, loss of ability to purchase and benefit from credit, mental and emotional

16   pain and anguish and the humiliation and embarrassment of consumer credit

17   denials.

18   **145.**   Defendant's PORTFOLIO RECOVERY ASSOCIATES and HSBC

19   CRA's EQUIFAX, TU, EIS,AND DOES 1-10, conduct, action and inaction was

20   willful, rendering it liable for punitive damages in an amount to be determined by

21   the Court pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent,

22   entitling plaintiff to recover under 15 U.S.C. §1681o.

23   **146.**   Plaintiff TUCK is entitled to recover attorneys fees from

24   defendants CRA's EQUIFAX, TU, EIS,AND DOES 1-10 in an amount to be

25   determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

26   **147.**   Defendants CRA's EQUIFAX, TU, EIS,AND DOES 1-10 violated

27   15 U.S.C. §1681i on multiple occasions by *failing to delete inaccurate information*

28   in plaintiff TUCK's credit line files *after receiving actual notice to remove such*

*inaccuracies*; by *failing to conduct a lawful reinvestigation*; by *failing to forward relevant information to the Creditors*; *failing to maintain reasonable procedures* with which to filter and verify disputed information in plaintiff TUCK's consumer credit file; and by *relying upon verification from a source it has reason to know is unreliable*.

**WHEREFORE**, Plaintiff TUCK demands judgement for damages against defendant's PRA, HSBC, EQUIFAX, TU, EIS, AND DOES 1-10, for actual statutory and punitive damages, attorney's fees pursuant to pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling plaintiff TUCK to recover under 15 U.S.C. §1681o., together with such other and further relief as the court may deem reasonable and just under the circumstances.

## PRAYER

I, DEBORAH TUCK, the Plaintiff In Pro Se, in the above-entitled Complaint respectfully prays for judgment as follows:

1. For actual, general and special damages according to the proof at trial;
2. For statutory penalties or civil penalties for each separate statutory violation where allowed by statute.
3. For punitive damages against defendants according to proof at trial and using the applicable punitive damages standards from the involved statutes;
4. For attorney's fees where authorized by statute or law;
5. For costs and expenses of suit; and
6. For such other relief as the court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

Dated this ___19th___ day of March 2016 By: _____

DEBORAH TUCK, Plaintiff In Pro Se

Deborah Tuck vs. Portfolio Recovery Associates, et al.
United States District Court Case No.

# CERTIFICATE OF SERVICE

I, Richard Caruso, the undersigned declare under the penalty of perjury that I am over the age of eighteen years and not a party to this action; that I served the above-named defendant's the following documents:

- **COMPLAINT FOR DAMAGES**

By placing copies of the above-described documents filed with this court in a separate envelope, with postage fully pre-paid, for each address named below and deposited each in the U.S. mail.

- Portfolio Recovery Associates, LLC,
  120 Corporate Boulevard, Norfolk, VA 23502

- HSBC BANK, NA
  90 Christiana Road, New Castle, DE 19720

- EQUIFAX INC.,
  1150 Lake Hearn Drive NE, Atlanta, GA 30343

- TRANS UNION LLC.,
  555 W. Adams Street Chicago, IL 60661

- EXPERIAN INFORMATION SOLUTIONS INC.,
  475 Anton Blvd.,Costa Mesa, CA 92626

Executed on this _19th_ day of March 2016, in San Diego county, U.S.A.

By ___Richard Caruso___,
RICHARD CARUSO

PROOF OF SERVICE                                                    Page 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

al Credit Reports & Credit Scores - TransUnion Credit ...     https://membership.tui.transunion.com/tucm/creditReport_3BCR.page

| Responsibility | Individual | | Individual |
|---|---|---|---|
| Current Balance | $1,401 | $0 | $1,401 |
| High Balance | $1,401 | $0 | $1,401 |
| Limit | $0 | $0 | $0 |
| Monthly Payment | $0 | $0 | $0 |
| Last Payment | | | |
| Status | Collection / Charge-Off | Unknown | Collection / Charge-Off |
| Original Creditor | HSBC BANK NEVADA N A | | HSBC BANK NEVADA N.A. |
| Loan Term | | | |
| Loan Type | | | |
| Opened | 10/25/2010 | | 10/01/2010 |
| Remarks | Placed for collection | | |

BAD

| ▸ LHR INC | $667 | 04/01/2012 |
|---|---|---|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

## Other Accounts

| Account Name | Balance | Balance Date | Monthly Payment | Term |
|---|---|---|---|---|
| ▾ PORTFOLIO | $1,401 | 10/01/2009 | $0 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| Credit Reporting Agency | | EQUIFAX | | | Experian |
| Credit Report Period | | 12/01/2015 | | | |
| Account Number | | HSBC -5597001868**** | | | |
| Condition | | Derogatory | | *BAD* | |
| Responsibility | | Individual | | | |
| Current Balance | $0 | $1,401 | | | $0 |
| High Balance | $0 | $1,401 | | | $0 |
| Limit | $0 | $0 | | | $0 |
| Monthly Payment | $0 | $0 | | | $0 |
| Last Payment | | 10/01/2009 | | | |
| Status | Unknown | 120 days late | | | Unknown |
| Loan Term | | 0 months | | | |
| Loan Type | | Collection | | | |
| Opened | | 10/01/2010 | | | |
| Reported | | 10/01/2009 | | | |
| Remarks | | Consumer disputes after resolution|Collection account | | | |

▸ Public Records